## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 11-21077-TLM |
| LEONARD O. WALLACE and ) | |
| PAMELA R. WALLACE, ) | |
| ) | Chapter 7 |
| Debtors. ) | |
| _____ ) | |
| ) | |
| JEREMY GUGINO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adv. No. 13-07011-TLM |
| v. ) | |
| ) | |
| LEONARD O. WALLACE and ) | |
| PAMELA R. WALLACE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

### MEMORANDUM OF DECISION
_____

**INTRODUCTION**

Pending before the Court are two matters. The first is a request for a finding of contempt and imposition of contempt sanctions against chapter 7 debtors Leonard Wallace and Pamela Wallace ("Debtors"). Such relief is sought by the chapter 7 trustee, Jeremy Gugino ("Trustee"), based on Debtors' violation of a temporary restraining order and preliminary injunction entered in this adversary proceeding. Adv. Doc. Nos. 32 (motion), 37 (order to show cause). The

MEMORANDUM OF DECISION - 1

second is Trustee's motion seeking to surcharge Debtors' tax refunds (past or prospective) and/or Debtors' exemptions. Adv. Doc. No. 39. Hearing was held on July 29, 2013. The Court determines that some but not all of the relief sought by Trustee may appropriately be granted. This Decision constitutes the Court's findings and conclusions.

## BACKGROUND AND FACTS[1]

Debtors filed a chapter 11 petition commencing their case on August 15, 2011. On March 22, 2012, Debtors' case was converted to one under chapter 7, and Trustee was appointed.

Trustee presently administers all the property of the estate. *See* § 704, § 541. On April 17, 2013, in a different adversary proceeding, Adv. No. 12-7056-TLM, Trustee was granted a judgment that provided declaratory relief regarding his ability to revoke Debtors' trusts holding ownership of a number of entities. Trustee then sought and obtained orders authorizing him to operate several of those entities' businesses under § 721.

The instant adversary proceeding, Adv. No. 13-07011-TLM, was commenced by Trustee in order to obtain injunctive relief prohibiting Debtors' interference with Trustee's administration of property of the estate and with his administration and management of the various entities belonging to Debtors that he

---

[1] Debtors' case has an extensive history, and only selected aspects will be noted in this Decision.

MEMORANDUM OF DECISION - 2

now controls. Trustee received that relief through the entry of a temporary restraining order ("TRO") on May 14, 2013, Adv. Doc. No. 4, and a preliminary injunction on May 24, 2013, Adv. Doc. No. 17 (the "Injunction"). They are addressed further below.

There is an underlying factor that must be mentioned. Testimony and evidence at prior hearings established that Debtors' present bankruptcy case (as well as Debtors' prior chapter 11 case before this Court that was ultimately dismissed) was conceived and initiated as a vehicle by which Debtors would not only stay but collaterally attack a judgment entered in the Montana state courts, and subsequently domesticated in California (where collection against Debtors' assets occurred) and in Idaho (where Debtors resided and held or controlled other assets). The judgment is in favor of parties who have previously in this case been called the "Hayes Creditors." Debtors' attacks on the underlying Montana judgment as being in error, obtained through fraud (intrinsic or extrinsic), and/or on other grounds have been uniformly unsuccessful. The judgment has been repeatedly affirmed in the Montana appellate courts, and the Montana trial court has denied reopening or other relief. The U.S. District Court for the District of Montana also rejected a collateral attack on the judgment, and sanctioned Debtors and their counsel for the attempt.

In this Court, Leonard Wallace's objection to the Hayes Creditors' claim was brought on for hearing, and was overruled and denied. Leonard Wallace did

MEMORANDUM OF DECISION - 3

not appeal that ruling. Pamela Wallace's objection to the Hayes Creditors' claim was also, following hearing, overruled and denied. She has appealed that ruling to the District Court for the District of Idaho, and that appeal is presently pending.

The Court also approved a multi-party compromise involving Trustee, the Hayes Creditors, and Idaho Independent Bank ("IIB") under Fed. R. Bankr. P. 9019. Among other things, that compromise dealt with the Hayes Creditors' claims against the estate, and Debtors' claims against the Hayes Creditors since the same constitute property of the bankruptcy estate. Leonard Wallace has appealed that compromise ruling to the District Court and that appeal is also pending.

In rendering its prior rulings, this Court noted the operation of the Rooker-Feldman Doctrine, and the principle of Full Faith and Credit, as well as other grounds that prohibit Debtors' attempted collateral attacks on the Montana judgment. This Court's rulings have followed extensive hearings, where Debtors have been given significant leeway and opportunity to present evidence and argument. This Court's rulings have often been in the form of lengthy oral rulings in order that it could try to explain as clearly as possible to Debtors, as zealous pro se litigants, precisely what results were reached and why.

Despite those efforts at explanation, Debtors' unsuccessful attacks have been constantly renewed and repeated. The Court has already cautioned Debtors

that principles of "law of the case"[2] and the limitations on this Court's consideration of issues that pend on appeal[3] operate to foreclose further attacks on the Hayes Creditors' claim or the settlement of the estate's (and thus Debtors') claims against the Hayes Creditors.

The Court's oral ruling approving the compromise was issued on May 9, 2013. In that same oral ruling, the Court denied Pamela Wallace's objection to the Hayes Creditor's claim.[4] After the Court's April, 2013 decision revoking Debtors' trusts, and after the Court's May 9 oral ruling approving the compromise and overruling the objection to claim, Debtor Leonard Wallace wrote several checks on one of the entity checking accounts (that of Iron Rooster, LLC), totaling $20,000, and gave those checks to Pamela Wallace who caused them to be cashed. Learning of this, Trustee on May 14, 2013, filed the complaint commencing the instant adversary proceeding for injunctive relief and obtained entry of the TRO.

---

[2] The Court is bound by the "law of the case" doctrine, which precludes a court "from reconsidering an issue that already has been decided in the same court . . . in the same case." *Fed. Deposit Ins. Corp. v. Kipperman (In re Commercial Money Ctr., Inc.)*, 392 B.R. 814, 832 (9th Cir. BAP 2008) (*citing Milgard Tempering, Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir.1990)). For law of the case to apply, "the issue must have been decided, either expressly or by necessary implication." *Commercial Money Ctr.,* 392 B.R. at 832. Here, this Court has ruled expressly on Debtors' objections to the Hayes Creditors' claim. To further entertain or address the previously rejected arguments would violate the law of the case doctrine and would constitute an abuse of discretion.

[3] Generally speaking, the bankruptcy court is divested of jurisdiction over those aspects of the case involved in the appeal. *Bishop v. Conley (In re Conley)*, 2001 WL 35814443 at *5 (Bankr. D. Idaho July 3, 2001) (citing *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1190 (9th Cir. 2000)).

[4] The Court's Order denying the claim objection was entered May 10, and the Order approving the compromise was entered on May 13, 2013.

MEMORANDUM OF DECISION - 5

The Injunction followed on May 24.

The Court's TRO and Injunction contain both negative and affirmative injunctive language. Debtors were specifically prohibited from interfering with Trustee's administration, management and control of the entities. Debtors were also ordered to return any property they had improperly taken from the entities, including but not limited to the $20,000 taken from Iron Rooster through the checks signed by Leonard Wallace and caused to be cashed by Pamela Wallace.

Debtors did not return the money, and Trustee filed his motion for an order to show cause why Debtors should not be found in contempt for their failure and refusal to abide by the affirmative injunction to return the property of the entities.[5] Adv. Doc. No. 32. The Court granted the motion, issued an order to show cause, and required Trustee to state with particularity the sanctions requested. Adv. Doc. No. 37. On July 1, 2013, Trustee filed his memorandum and requested:

1) A $20,000 judgment in favor of the Trustee as the manager of Iron Rooster based on the funds Debtors failed to return to that entity in violation of the TRO and Injunction.

2) A judgment in favor of the bankruptcy estate for attorneys' fees and costs incurred in pursuing the motion for order to show cause and sanctions.

3) A $100.00 fine per day, payable to the Court, until Debtors pay the

---

[5] Trustee was concerned not only with the $20,000 but also with a "man-lift" and certain other equipment that Debtors allegedly took and/or sold.

MEMORANDUM OF DECISION - 6

proposed judgments in full.

4) A finding or ruling that Debtors refused to obey a lawful order of the Court.

5) An order surcharging Debtors' exemption in tax refunds to the extent the judgments are not satisfied after three continuous months of collection efforts by the Trustee (or, in the event the Court determines the tax refunds cannot be surcharged, an order surcharging Debtors' other exempt assets).

At the July 29 hearing, the evidence established that Leonard Wallace directed an individual, Daniel Morine, to take a "man-lift" belonging to Iron Rooster[6] to an auction company. Morine did so, and is shown falsely as the "consignor" in the documentation. The property was sold at auction. However, Trustee managed to recover the proceeds of the sold man-lift. While Trustee seeks no economic recovery, he argues this type of conduct supports imposition of the requested sanctions.[7]

As to the checks and the $20,000 Debtors took and failed to return, Leonard Wallace testified that he received the TRO and the Injunction; that he was aware of

---

[6] Leonard Wallace acknowledged the man-lift was used by Iron Rooster. He attempted to argue his brother-in-law ("George") was the actual owner of the lift based on a prior oral agreement to let George use it in another business. However, the agreement was not substantiated, and Leonard Wallace conceded George had never taken possession of or used the equipment.

[7] Trustee also raised arguments about a number of other items of equipment. However, certain of the same were apparently sold at auctions preceding Trustee's obtaining the TRO and Injunction, and potentially before Trustee obtained orders regarding his control and management of the entities.

MEMORANDUM OF DECISION - 7

the ordered return of the $20,000; and that he failed to comply. Pamela Wallace was also aware of the various orders in the case, caused the Iron Rooster checks to be cashed, insisted she would have cashed more if she could, and failed to return the $20,000 at issue.

In acknowledging their failure and refusal to obey the subject Orders, Debtors essentially offered as a defense their opinion and belief that the bankruptcy process has been "unfair" to them; that they have been wrongly denied relief on their collateral attacks on the Hayes Creditors' judgment and claim; that the alleged "fraud on the [Montana state] court" vacates the effectiveness of *every* subsequent order of *every* other court; and that the Trustee and the Hayes Creditors (or their lawyers) are truly the ones who are "in contempt." Debtors' arguments resurrected their previously argued and rejected contentions about the "fraudulent" or otherwise "invalid" Montana judgment.

## DISCUSSION AND DISPOSITION

### A. Contempt and sanctions

This Court has the ability to impose civil contempt sanctions under § 105(a). *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178 (9th Cir. 2003); *Rosales v. Wallace (In re Wallace)*, 490 B.R. 898 (9th Cir. BAP 2013); *In re 1601 W. Sunnyside Dr. #106, LLC*, 10.4 I.B.C.R. 110, 2010 WL 5481080 (Bankr. D.

MEMORANDUM OF DECISION - 8

Idaho Dec. 30, 2010).[8] In order to impose civil contempt sanctions, the Trustee must show by clear and convincing evidence that the Debtors knowingly violated a specific and definite order of the Court. A person fails to act as ordered by the court when he fails to take all reasonable steps within his power to ensure compliance with a court's order. Once a knowing violation is shown, the burden shifts to Debtors to demonstrate why they were unable to comply with the order. *See Wallace,* 490 B.R. at 905.

### 1. Contempt

The TRO and Injunction are specific and definite Orders of the Court. Debtors did not appeal or otherwise seek review of the Orders.[9] The Orders required Debtors to "immediately return any property (including money or other funds) that they have improperly taken from the Entities, including, but not limited to, the $20,000 taken from the Iron Rooster, LLC bank account." Doc. No. 17.

Trustee's memorandum, and the evidence, narrows the focus of the

---

[8] *See generally Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911), where the Supreme Court noted the power to sanction is both necessary and integral to a court's performance of its duties. Without this power, courts would be "mere boards of arbitration, whose judgments and decrees would be only advisory." Indeed, if "a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Id.*

[9] If Debtors had any issues with or doubts regarding the TRO or Injunction, or what was thereby prescribed, they had the ability to seek clarification from this Court. *See Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945) (noting that the ability to seek clarification of a court's order allows parties to avoid unwitting contempt and it allows the court to punish deliberate contempt); *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1432 (7th Cir. 1985) ("The right to seek clarification or modification of the injunction provides assurance, if any be sought, that proposed conduct is not proscribed.").

MEMORANDUM OF DECISION - 9

contempt question to Debtors' failure to return the $20,000 taken from Iron Rooster as affirmatively required under the TRO and Injunction.[10] Debtors conceded knowledge of this Court's Orders. They admit they refused to obey the Orders. Indeed, they were not contrite. Nor did Debtors show they were unable to obey the Orders, only that they did not feel obligated to obey and they did not intend to obey.[11]

Debtors' objections and defenses are, at bottom, an argument that they cannot be held in contempt because the subject Orders are invalid. The alleged invalidity comes not from some legal or procedural defect but, instead, from the fact that Debtors disagree with them. As Pamela Wallace stated in her written opposition to the motion, the Hayes Creditors' actions and the prior litigation regarding the Hayes Creditors "render this Court and its rulings, with all due respect, a Joke."

Debtors are not at liberty to decide to honor rulings with which they agree and ignore those with which they disagree. The law is clear that a failure to abide by a court's injunction, even an unconstitutional injunction, may subject a person

---

[10] In the event Trustee believes the disposition of the "man-lift" was properly at issue, his evidence established that he collected the proceeds of that equipment notwithstanding Debtors' interference. So it is not the violation of the affirmative reimbursement requirement that is at issue, but the violation of the negative requirement not to interfere. And, as to other equipment of Debtors' entities, the evidence was inconclusive.

[11] Debtors each filed objections to the imposition of sanctions. The objections barely addressed the Court's Orders and Debtors' failure to comply with those Orders. Instead, Debtors' objections again attacked this Court's decision regarding the Hayes Creditors' claim and the approval of the compromise.

MEMORANDUM OF DECISION - 10

to contempt. *See Walker v. City of Birmingham*, 388 U.S. 307 (1967). The Supreme Court there noted, in the context of an appeal of a criminal contempt ruling, that "in the fair administration of justice no man can be judge in his own case . . . however righteous his motives . . . . One may sympathize with the petitioners' impatient commitment to their cause. But respect for the judicial process is a small price to pay for the civilizing hand of law[.]" *Id.* at 320-21. The Supreme Court there concluded that "An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein . . . must be obeyed by them, however erroneous the action of the court may be . . . . It is for the court of first instance to determine the question . . . and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished." *Id.* at 314 (quoting *Howat v. State of Kansas*, 258 U.S. 181, 189-90 (1922)). Debtors cannot ignore this Court's orders merely because they believe errors have occurred in this case or because they disagree with the Court's decisions. Their recourse is to appeal any orders they believe are entered in error, not to simply ignore them.

  The record establishes that Debtors knowingly failed and refused to obey direct Orders of the Court. Trustee's request that the Court expressly find such a violation, and to find Debtors in contempt, will be granted.

MEMORANDUM OF DECISION - 11

### 2. Sanctions

Thus the Court must determine the appropriate civil contempt sanctions to enter against Debtors. Civil contempt sanctions under § 105(a) are discretionary but, if the Court elects to impose sanctions, such sanctions must either be compensatory or designed to coerce compliance with the order. *Dyer*, 322 F.3d 1192.[12]

#### a. Finding of contempt

As noted, the Court will enter an express finding that Debtors knowingly violated this Court's Orders and are therefore in contempt.

#### b. Fees and costs

Trustee also requests his attorneys' fees and costs as a sanction for Debtors' failure to obey the TRO and Injunction. *Dyer* specifically notes that costs and attorneys' fees are a form of compensatory sanction. Thus, Trustee's request will be granted. Such fees and costs shall be limited to those incurred in bringing the motion for an order to show cause and in preparing for and attending the July 29, 2013 hearing.

Trustee shall file, within two weeks of the date of the Order on today's Decision, an itemization of such fees and costs. Debtors will have two weeks from that submission within which to file any written objection to any of the fees and

---

[12] *See generally United States v. United Mine Workers*, 330 U.S. 258, 302-04 (1947) (sanctions imposed after a finding of civil contempt should serve two functions: to coerce compliance, and to remedy past non-compliance).

MEMORANDUM OF DECISION - 12

costs claimed. The fees and costs awarded to the Trustee and assessed against Debtors will then be determined by the Court on the record, without hearing and without oral argument.

### c. Judgment

In addition, Trustee seeks a $20,000 judgment in his favor, as manager of Iron Rooster, as a sanction for Debtors' failure to deliver the $20,000 as required under the Injunction. Trustee argues that entering a $20,000 judgment would allow Iron Rooster to pursue collection efforts outside this Court. However, the Trustee has not explained why the Order granting the Injunction and requiring Debtors to pay $20,000 cannot itself be enforced outside this Court and why a second, redundant judgment is needed. Idaho Code § 10-1301 defines a foreign judgment as a "judgment, decree or order" of a court of the United States or any other court." The Injunction is an Order of this Court. As such, it does not appear a separate judgment is needed or warranted.

Moreover, such a judgment does not appear to compensate the Trustee or Iron Rooster for damages caused by Debtors' violation of this Court's Orders. Debtors removed $20,000 from Iron Rooster's account prior to the entry of this Court's TRO and Injunction. The loss of those funds was a preexisting damage, and one the Injunction sought to remedy. However, Trustee did not prove that Debtors' failure to pay those funds created a further loss to Iron Rooster. Thus, at best, Trustee's requested judgment is duplicative of the Orders already entered by

MEMORANDUM OF DECISION - 13

the Court. At worst, it is punitive and outside this Court's authority to issue. Under either alternative, the Court declines to impose the requested sanction.

### d. Daily fine

Finally, Trustee seeks imposition of a $100 per day fine until Debtors purge themselves of the contempt by paying the $20,000 they were required to return under this Court's TRO and Injunction.[13] Trustee relies on *1601 W. Sunnyside Dr.*, in which this Court imposed a daily fine on a major financial institution, Bank of America, in an attempt to coerce that entity to reverse a foreclosure sale that had occurred in violation of the automatic stay and return Debtor's title to the subject property.

First, the Court finds *1601 W. Sunnyside Dr.* easily distinguishable, both in the nature of the issues presented and the attributes of the contumacious party. Second, while Trustee correctly notes that a daily fine, if imposed to induce compliance, can be an acceptable civil contempt sanction, he ignores the fact that, in order to impose such a sanction, the Court must believe that it will induce compliance with its Orders. In other words, the Court must consider the usefulness of the sanction. Here, no evidence was presented to suggest that

---

[13] As noted, Trustee also seeks as a sanction for contempt the surcharge of Debtors' exemption in tax refunds, but such a request will be addressed under Trustee's separate motion to surcharge.

ordering a daily monetary fine will effectively prompt or coerce compliance.[14]

Thus, the Court will deny this requested sanction.

### B. Motion to surcharge exemption in tax refund

Trustee requests the Court allow him to surcharge Debtors' tax refund exemption to pay the attorneys' fees and costs imposed as civil contempt sanctions and the $20,000 required under the Injunction. Alternatively, Trustee requests that "to the extent the Court determines the Debtors' tax refunds are not subject to surcharge by the bankruptcy court, . . . the Court order surcharge of Debtors' other exempt property (if any)."

At this time and in this Circuit, surcharging exemptions is allowed in exceptional circumstances when faced with a debtor's misconduct. *See Latman v. Burdette*, 366 F.3d 774 (9th Cir. 2004). The Circuit has noted that "surcharge may be the only means fairly to ensure that debtors retain their statutory 'fresh start,' while also permitting creditors access to property in excess of that which is properly exempted under the Bankruptcy Code."[15]

---

[14] Here, it is debatable how much fines or sanctions motivate Debtors' conduct. Debtors were already sanctioned by the U.S. District Court for the District of Montana. And Leonard Wallace was already sanctioned $17,010 under Bankruptcy Rule 9011 in Adv. No. 12-07035-TLM (*Wallace v. Hayes, et al.*) for renewing precluded attacks on the Hayes Creditors' claim. Leonard Wallace was similarly sanctioned $1,118 under Rule 9011 in Adv. No. 12-07056-TLM. The Court is not aware of the results flowing from, or effectiveness of, those sanctions (which is to say, whether they were paid). However, it is clear that none of these sanctions has had any appreciable effect in stopping Debtors from repeatedly renewing the same foreclosed attacks on the Hayes Creditors' claim, as evidenced by their doing so yet again at the hearing on July 29.

[15] At hearing, Trustee acknowledged that *Latman* was followed in *Law v. Siegel*, 435

(continued...)

At hearing, Trustee had considerable difficulty articulating precisely what property was to be surcharged. Much of what he suggested should be surcharged is *non-exempt* property of the estate, which falls outside *Latman* and, frankly, makes no sense because Debtors have no claim to it.

Some of the property Trustee suggests surcharging includes tax refunds due to Debtors (or potentially due to Debtors) related to post-conversion periods. Such refunds would not be subject to surcharge as they are not property of the estate under any provision of § 541. Nor were the amounts of or entitlements to such refunds proven by evidence.

Finally, Trustee requested the Court allow him to surcharge Debtors' other exemptions. The exempt assets (or equity in those exempt assets) that would be subject to this request was vague, and Trustee failed to provide adequate notice to Debtors or adequate proof to the Court to justify this relief. This request will also be denied.

In short, none of the surcharge requests are found well taken, and Trustee's motion will be denied.

**CONCLUSION**

Debtors have represented themselves over an extended period. Debtors are resolute, and apparently indefatigable, pro se litigants. But litigants, whether

---

[15] (...continued)
Fed. Appx. 697 (9th Cir. 2011), and that the Supreme Court has granted a writ of certiorari in *Law*. 133 S. Ct. 2824 (2013).

MEMORANDUM OF DECISION - 16

represented by counsel or appearing pro se, are not entitled to more than their day in court. Debtors' arguments have been patiently heard. That Debtors disagree with the Court's rulings does not give them license to ignore them.

The Court has carefully considered the relief sought by Trustee given the proven violation of the Orders. It does not do so with the vigor and opprobrium of Trustee, but instead with the impartial deliberation required of courts.[16]

Based on the foregoing, the Court will impose some of Trustee's requested sanctions – awarding attorneys' fees and costs for the contempt process, and making a finding that Debtors have failed to obey and abide by a Court Order. It will deny all other suggested sanctions, and will deny the request to surcharge.

The Court will enter a separate order so providing.

DATED: August 22, 2013



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[16] The Court agrees with the comment found in *Liteky v. United States*, 510 U.S. 540, 564 (1994) (Kennedy, J. concurring), even though the issues there were different: "Disputes arousing deep passions often come to the courtroom, and justice may appear imperfect to parties and their supporters disappointed by the outcome. This we cannot change. We can, however, enforce society's legitimate expectation that judges maintain, in fact and appearance, the conviction and discipline to resolve those disputes with detachment and impartiality."